BRITISH AND AMERICAN MORTGAGE Co. *v.* BENJAMIN L. TODD.

1. VENDOR AND VENDEE. *Warranty of title. Breach. Damages. Interest.*

   Interest on the purchase money paid for land is not recoverable as damages for breach of warranty of title when the evicted grantee has been acquitted of all liability to the owner of the land for mesne profits without paying the same; and in such case the proportion between the amount of the interest and the value of the mesne profits is wholly immaterial.

2. SAME. *Mesne profits. Improvements and taxes. Proportion.*

   The measure of damages recoverable for breach of warranty of title is not affected by the proportion that exists between the value of the mesne profits received by the evicted grantee and his outlay for improvements and taxes.

3. SAME. *Surplus. Set-off. Purchase money.*

   The surplus of mesne profits received by an evicted grantee in excess of his outlay for improvements and taxes cannot in an action for breach of warranty of title be set off against the purchase money of the land on the ground that the same has been credited upon a mortgage debt due to the warrantor, in an equity suit wherein the mortgagor has procured the cancellation of the warrantor's purchase of the land under an invalid foreclosure of the mortgage.

FROM the circuit court of, first district, Hinds county.

T. A. McWILLIE, Special Judge.

Todd, appellee, was plaintiff, and the Mortgage Co., appellant, defendant in the court below.

The action was one to recover damages for breach of warranty of title, and was tried by agreement before a special judge without the intervention of a jury upon an agreed statement of facts and certain portions of the record of an equity suit mentioned therein and also in the briefs of counsel and the opinion of the special judge. The agreed statement of facts is as follows:

"We, the undersigned attorneys for the plaintiff and the defendant in the above-stated cause, do hereby agree that the following are the facts in said cause:

On February 28, 1890, the British & American Mortgage Company, Limited (hereinafter called "the company"), loaned to Bourbon Shotwell the sum of $700, and in order to secure the payemnt of the same Bourbon Shotwell and his wife, Lida Shotwell, executed their deed of trust upon the following described lands in the first district of Hinds county, Mississippi —to wit: 23 acres in the north end of the N. W. 1-4 of the S. W. 1-4 and 30 acres in the north end of the S. W. 1-4, section 7, township 6, range 2, east; the east 1-2 of the N. E. 1-4, section 13; 101 acres in the south end of S. E. 1-4, and 27 acres on the east side of the E. 1-2 of the S. W. 1-4, section 12, and all in township 6, range 1, east, containing in all 261 acres, more or less; said lands were conveyed to A. R. Shattuck, trustee; the said Bourbon Shotwell made default in the payment of said indebtedness, and the said Shattuck, trustee, refused to execute the trust, and said company appointed one C. M. Williamson, as substituted trustee, on January 25, 1894, by virtue of the provisions of said deed in trust, who sold the above described lands, when and where the said company became the purchaser of said lands at said trustee's sale. On November 27, 1895, the company sold and conveyed by deed of general warranty the above described lands to B. L. Todd, the plaintiff in this suit, for the consideration of $1,000 cash in hand paid. The said B. L. Todd, immediately upon the execution of said conveyance,

went into possession of said lands and continued in possession thereof until evicted as hereinafter named.

In December, 1900, Bourbon Shotwell and his wife, Lida Shotwell, filed in the chancery court, first district, Hinds county, of said state, their original bill of complaint, wherein they made as defendants the mortgage company, C. M. Williamson, and B. L. Todd; it was alleged in said bill, among other things, that the sale made by the substituted trustee was illegal and voidable, and prayed that the deed from the substituted trustee to the company and the deed from the company to Todd be cancelled and set aside, and that the defendants in said cause be required to account for reasonable rents and profits for the use of the lands for the time they had been in possession thereof. The defendants in said chancery cause answered the allegations of said bill, and proof was taken, and afterwards the chancellor of said court held that the complainant was entitled to relief. And on the 17th day of May, 1903, a decree was entered in said cause sustaining said bill and referred the matter of accounting to Oliver Clifton as commissioner, whose duty it was to take and state an account, etc. A copy of said decree is hereunto annexed and made a part of this agreement; the said commissioner, Oliver Clifton, after taking proof, made his report to said court, which confirmed said report on July 25, 1903; a copy of said decree confirming said report is hereto annexed and made a part of this agreement.

In said chancery proceedings of *Bourbon Shotwell et al.* v. *Said Company et al.,* Reuben Shotwell and others also filed their original and amended bills of complaint, wherein the said Reuben Shotwell and Mary C. Shotwell claimed to be the owners of an undivided one-fourth interest in said lands, and the said chancery court held that the said Reuben Shotwell was the owner of an undivided one-fourth interest in said land; and on the 17th day of May, 1903, the said chancery court entered its final decree in said suit of *Reuben Shotwell et al.* v. *B. L. Todd*

*et al.;* a copy of said decree is hereunto annexed and made a part hereof.

In November, 1903, said company wrote and offered to pay the said B. L. Todd in full payment and satisfaction of its liability to said Todd on its covenants of warranty in said conveyance made on the 27th day of November, 1894, the sum of $906.40, which sum the said B. L. Todd refused to accept, and on the 9th day of December, 1903, the said B. L. Todd sued out an attachment against the estate of the said company in this court, and made the same returnable to the January term, 1904, of said court, and had summoned as garnishees the following named persons, who are residents of said first district of Hinds county—to wit: Jeff Gordon and Jane Gordon, Mrs. E. C. Wiggins and Blake B. Wiggins, and James H. Tripp. The said garnishees are indebted unto the said company in the following amounts: The said Gordons in the sum of $540, due as follows: November 1, 1904, $60.00; November 1, 1905, $60.00; November 1, 1906, $60.00; November 1, 1907, $360.00; all drawing interest at the rate of eight per cent per annum after maturity. Mrs. E. C. Wiggins and Blake B. Wiggins, $1,080, due as follows: November 1, 1904, $200.00; November 1, 1905, $200.00; November 1, 1906, $200.00; November 1, 1907, $1,200.00. J. H. Tripp, in the sum of $720.00, due as follows: November 1, 1904, $240.00; November 1, 1905, $240.00; November 1, 1906, $240.00; all of said indebtedness drawing interest at the rate of eight per cent per annum after maturity. The British & American Mortgage Company, Limited, is a foreign corporation. Before the bringing of this suit the said British & American Mortgage Company, Limited, made out an account, forwarded it by mail to counsel for plaintiff in this suit, which account is hereunto annexed; said account shows that there was due Todd, the plaintiff, $906.40; the company thereupon offered and were ready and willing to pay the said sum of $906.40 to the plaintiff in full settlement and satisfaction of his demands, which sum so offered was refused by said Todd upon

the ground that the sum so offered was too small. Said company has always been ready and willing to pay the same, and tenders the same with its plea in this behalf, and now brings the same into court.

It is further agreed that either the plaintiff or the defendant may introduce in evidence all or any part of the record in the chancery suit of *Bourbon Shotwell et al.* and of *Reuben Shotwell et al.* v. *B. L. Todd et al.*

Todd made improvements, paid taxes, and collected rents, as shown by commissioner's report in the chancery suit. He paid no taxes and collected no rents for 1903, and paid no rents for 1903, place being in possession of tenants, who paid rents to Shotwell.

It is further agreed that a reasonable attorney's fee for defendant in this suit is to be fixed by the judge of the court.

Neither of the parties to said chancery suit appealed.

The said Bourbon Shotwell, in October, 1903, paid to the British & American Mortgage Company the sum of $852.93, as prescribed in said decree, and the said B. L. Todd, in October, 1903, paid to Reuben Shotwell the sum of $186.09, as prescribed in said decree. In October, 1903, the said B. L. Todd surrendered possession of said land to the said Bourbon Shotwell and Reuben Shotwell, under a writ of possession.

Witness our signatures in duplicate, this January, 1904.

ALEXANDER & ALEXANDER, *Attorneys for Plaintiff.*
WM. C. McLEAN, *Attorney for Defendant.*

BOURBON SHOTWELL ET AL., ⎫
      No. 1919.    v.       ⎬ FINAL DECREE.
   B. L. TODD ET AL.        ⎭

This cause came on this day to be heard on the bill, answer, cross-bill and answers, and other pleadings filed herein, and the proof taken herein, and the same having been duly argued by

counsel and fully considered by the court, and the court having duly advised in the premises, doth find, that the appointment of the substituted trustee is void and the complainants are entitled to the relief sought in their original bill. It is, therefore, ordered, adjudged, and decreed by the court that the sale of the premises described as:

Twenty-three (23) acres in south end of northeast quarter of southwest quarter, and thirty (30) acres in north end of southwest quarter of section seven (7), township six (6), range two (2) east; the east half of the northeast quarter of section thirteen (13); one hundred and one (101) acres in south end of southeast quarter, and twenty-seven (27) acres on east side of east half of southwest quarter of section twelve (12), all in township six (6), range one (1), east, containing in all two hundred and sixty-one (261) acres, more or less, in Hinds county, Mississippi, purporting to have been made by C. M. Williamson, substituted trustee, under and by virtue of the deed of trust set out in the pleadings and proof herein, be, and is hereby, declared null, void, and of no effect, and the conveyance to said premises made and executed in pursuance thereof by said C. M. Williamson, as substituted trustee, to the British & American Mortgage Company, Limited, be, and the same is hereby, cancelled and held for naught as a cloud upon complainant's title; and it further appearing that the conveyance of said premises by the British & American Mortgage Company, Limited, to defendant, B. L. Todd, is null, void, and of no effect, it is hereby adjudged and decreed that the same be cancelled and held for naught as a cloud upon complainant's title. It is further ordered, adjudged, and decreed by the court that the said defendants, B. L. Todd and the British & American Mortgage Company, Limited, be, and they are hereby, declared to be and shall be treated as mortgagees of the premises in possession, and complainants are held to be due and liable to the defendants in and for the amount of the principal and interest of the

debt remaining due and owing said defendants under and by virtue of the said mortgage executed to secure the same, and it is hereby ordered, adjudged, and decreed that said indebtedness be and is a subsisting lien on said premises.

It is further ordered, adjudged, and decreed that this cause be, and it is hereby, referred to Oliver Clifton as commissioner, to take and state an account of what is due the said defendants for principal and interest on said indebtedness set out in the cross-bill of complainant of said defendants herein; also to take and state an account of the rents and profits of and from the said mortgaged premises, showing from what part of said premises the rents were derived which have come into the hands of the said defendants or of any other person for their use, or which they might have received but for their negligence or willful default; also to take and state an account of the reasonable rental value of the property in question for the time the same has been in the possession of the said defendants, up to and including the time of this hearing; also to take and state an account of the value of such improvements as have been placed on said premises by said defendants, and the part of said premises on which said improvements were made, showing the time said improvements were made and whether such improvements were permanent, valuable, necessary, and not ornamental; and also the amount of taxes paid by defendants on said premises.

It is further ordered, adjudged, and decreed that said commissioner be, and is hereby, authorized and directed to subpoena witnesses and take testimony in and about said matter, and after he shall have fully considered the same and stated said account, he shall promptly return the same to this court for its consideration.

It is further ordered, adjudged, and decreed that a writ of possession shall issue to put said complainant, Bourbon Shotwell, into possession of said premises as soon as he shall pay or tender to said defendants whatever sum this court, after the

coming in of said commissioner's report, shall finally adjudge to be due and owing said defendants, or either of them, and secured by said deed of trust.

Ordered, adjudged, and decreed, this the 17th day of May, 1902.                              H. C. CONN, *Chancellor.*

Decree confirming report of Oliver Clifton.

BOURBON SHOTWELL  
    No. 1919.   v.  
B. L. TODD ET AL.

This cause came on for hearing in vacation on this the 25th day of July, 1903, the same having been at last term of court submitted by consent of both parties for hearing in vacation upon the report of Oliver Clifton, commissioner appointed to compute and state to the court an account of the debt due by complainants to the defendant, the British and American Mortgage Company, Limited, and of the rents, issues, and profits of the plantation in controversy, and of the taxes paid and improvements made by the defendants, and upon the exceptions by the complainants and defendants to said report of the commissioner; and the chancellor, having heard said report and the evidence in the matter and the argument of counsel for both sides, doth now decree that the exceptions of the defendants to said report be, and the same are hereby, overruled, and that all the exceptions of complainants to said report be, and the same are, overruled in every respect except the following: The item of $11.55 interest from November 1st, 1894, to January 25, 1895, together with interest thereon at 10 per cent for the full time to May, 1903, be deducted from the amount found by the commissioner, and that the amount of $61.06 allowed for attorneys' fees, and the interest thereon for the time allowed by the commissioner at 10 per cent, be deducted from the balance due found by the commissioner, and that attorneys' fees be allowed only on the amount found to be due after said de-

ductions, at 5 per cent of said amount; and it appearing to the chancellor after calculation and proper deduction of said interest and attorneys' fees that the true balance due by complainants to defendants is $813.27, plus 5 per cent thereon as attorney's fees—to wit, the sum of $40.66—making an aggregate of $853.93 due by complainants to defendant, the British and American Mortgage Company, Limited, it is further decreed by the court that the complainants, Bourbon Shotwell and his wife, Lida Shotwell, shall pay to the British & American Mortgage Company, Limited, the said sum of eight hundred and fifty-three and ninety-three one hundredths dollars, with 10 per cent per annum from this date till paid.   Said sum is hereby affixed as a lien on the lands involved in this suit—to wit, the undivided three-fourths interest of Bourbon Shotwell in all the land described in the original bill of complaint—and unless said complainants shall pay said sum with interest within ninety days from this date, said lands shall be sold to pay the same, with costs of sale and any other costs decreed against complainants; that W. W. Downing, clerk of the court, is appointed commissioner to make said sale.   Complainants shall pay all costs to be taxed on the accounting, including fees of the commissioner, and the defendants shall pay all costs in the case down to the final decree ordering the accounting.   Oliver Clifton is allowed the sum of twenty-five dollars as his compensation as commissioner in this case.   Upon the payment and satisfaction of this decree before sale by complainants, they shall be entitled to the possession of said property, and, if necessary, a writ of assistance may issue to put them in possession.

Decreed in vacation this July 25th, 1903.

ROBT. B. MAYES, *Chancellor.*"

The trial in the circuit court resulted in a judgment in favor of the plaintiff, Todd, for the sum of $1,000 and interest thereon at six per centum per annum from January 1, 1903, and

one-fourth of the interest on said sum at the same rate from November 27, 1895, until January 1, 1903.

From this judgment the plaintiff prosecuted an appeal and the defendant a cross-appeal.

*W. C. McLean,* for the appellant.

The three-fourths of the surplus of rents over expenditures for improvements and taxes ($558.27) was a proper set-off against Todd's demand, for the reason that the same had been credited in the equity case on the mortgage company's debt against Bourbon Shotwell, and Todd relieved to that extent, while Todd, for whose use and benefit this application of the $558.27 was made, had received and ever since retained all of the rents, amounting to $1,574; that had the mortgage company not been a party to the chancery suit, Todd's equity alone would have been considered, and under his subrogation to the company's right he would have been permitted to collect the balance of $853.93 due on the mortgage debt, and the same would necessarily have become a credit on his demand for failure of title; there is no reason in Todd's claim that under his purchase of the land he became the assignee of the company's mortgage debt, and that only on the principle of subrogation could he claim the $853.93; had Todd been sued in ejectment he would have been compelled to pay $744.35, the excess of rents over improvements and taxes, and while the purchase money and interest accrued to January, 1904, would be $1,485, or $740.64 more than the surplus of rents, and this last sum which he would have in pocket as the result of the litigation would be $165.75 less than the company had tendered to him.

Counsel argued the whole case elaborately on both the law and the facts, citing *Phipps* v. *Tarpley,* 31 Miss., 433; *White* v. *Tucker,* 52 *Ib.,* 145; *Brooks* v. *Black,* 68 *Ib.,* 161; *Bonner* v. *Lessley,* 61 *Ib.,* 397; *Dyer* v. *Britton,* 53 *Ib.,* 270.

*Alexander & Alexander,* for appellee and cross-appellant.

The measure of Todd's recovery was the price of the land and interest for the whole time that had elapsed since his purchase, during which he had been in possession and had been charged with rents on the accounting in equity with the true owner; it was error to say that Todd had been acquitted of liability for rent, for, while actually charged with rents, he was entitled to be subrogated to the mortgage company's right to use on the accounting the mortgage debt and accrued interest thereon, along with his outlay for improvements and taxes and accrued interest, aggregating about $2,400, which he was entitled to be paid before eviction, and against which Shotwell had the right to charge him with rents amounting to only about $1,400; the sum expended for improvements and taxes went to pay the rent claim, and to that extent Todd certainly was not acquitted of liability for rent; the company demanded and received and still held the balance of $853 remaining due on the mortgage debt, and could not demand that Todd should give it credit for a sum held by itself; Todd's improvements greatly enhanced the rents, and it was intolerable that he should be treated as having improved himself out of any of his rights against his warrantor.

Counsel discussed the whole case at length and cited *White* v. *Tucker,* 52 Miss., 145; *Brooks* v. *Black,* 68 *Ib.,* 161; Rawl on Cor., 57-75.

Argued orally by *W. C. McLean,* for appellant and cross-appellee, and *C. H. Alexander,* for appellee and cross-appellant.

The opinion of the special judge mentioned and adopted by the supreme court is as follows:

"This was an action brought by the plaintiff, Todd, against the defendant company, for damages arising out of its breach of warranty of title, the demand being for $1,000 of purchase money and interest thereon at 6 per cent per annum from the

date of payment. The company had previously taken a deed of trust on the land from Bourbon Shotwell to secure a loan of $700 and interest thereon, which it .foreclosed in 1894, and, having become the purchaser at the trustee's sale, it conveyed the land to Todd by deed of general warranty of title, and gave him possession on January 1, 1896. In 1901 Bourbon Shotwell filed his bill in equity against the company and· Todd to set aside the sale by the trustee, praying an accounting as to rents and offering to pay whatever balance might be due the company on his indebtedness. Reuben Shotwell became a party to this proceeding, and established his ownership of an undivided one-fourth of the land. The trustee's sale was set aside, and on the accounting ordered it was ascertained that Todd had paid taxes and made improvements at considerable cost, and had collected rents for the years 1895 to 1902, both inclusive, amounting to a sum of money which exceeded the outlay for improvements and taxes paid by $744.36, and that the amount due by Bourbon Shotwell on his debt to the company, after deducting three-fourths of the rent surplus, was the sum of $853.93. These findings of the commissioner were carried into effect by a final decree entered in 1903, which required Bourbon Shotwell to pay to the company the sum of $853.93. This he paid, and Todd paid to Reuben Shotwell his one-fourth of the rent surplus, amounting to $186.09. The title of the Shotwells being thus established, and Todd's eviction following, he filed this suit. As stated, three-fourths of the rents received by· Todd over and above his outlay for improvements and taxes were applied in reduction of the amount due by Shotwell on the debt for which the property had been sold by the trustee. No exceptions were filed to this method of stating the account, and Todd and the company being represented by the same solicitor, it would seem that the mode of stating the account must have been assented to as between them. However that may be, the operative effect of the equity proceedings is to acquit Todd of any liability to Bourbon Shotwell for three-fourths of the rent,

and under such circumstances he cannot be heard to claim three-fourths of the interest on the purchase money for the period during which he received the rents. If, as has been often held, interest and mesne profits be the equivalents of each other, then a fraction of the one is the equivalent of a corresponding fraction of the other, and where the tenant has received an acquittance as to part of the rents, he should be denied the recovery of a corresponding part of the interest. This does not affect the principal, however, amounting to $1,000, and Todd is entitled to recover this sum, together with 6 per cent interest thereon for the year 1903, the rent of which became due after his eviction, and was never collected by him, and also one-fourth of the interest on $1,000 from the date of his purchase until 1903, since he has settled with Reuben Shotwell for one-fourth of the rent. It cannot be objected to this conclusion that the surplus of the rents received by Todd over his expenditures for improvements and taxes should be applied as a set-off against this obligation. The course taken on the equity trial was conformable to equity, and must be given its full effect. All the advantages incident to the acquisition of a valid title should have accrued to Todd as between him and the company; and if the rents exceeded his expenditures on the property, as between him and the mortgage company, he was entitled to all the benefits arising therefrom. This surplus cannot now be employed as a set-off against the principal of Todd's debt by reason of its character and the appropriation made of it by the equity court; and, furthermore, I am unable to see how a court of law, in an action for damages arising out of breach of warranty of title, can take cognizance of it. It is well settled that the proportion between rents and interest does not affect the question of liability for interest, and that when rents have been received no interest is recoverable whether they be great or small. It is only the magnitude of the rent, as compared with the expenditures, that creates the surplus; and this serves no greater office than would a much smaller sum, and can-

not be suffered to decrease the sum recoverable as principal. In a suit by an evicted grantee for breach of his grantor's warranty of title, his right to recover is in no wise affected by the question of rents, except that where he has paid them he may recover both principal and interest, and where he has not, he can recover the principal only; and the amount of the rents, as compared with expenditures, is wholly immaterial in such case. The defendant's contention on this head derives no strength from the analogy sought to be drawn from the action of ejectment. In that case there is no privity between the real owner, who successfully asserts his title, and the party in possession; and the latter is in no position to say that, so far as the former is concerned, he is entitled to claim the rent surplus. If the position of the defendant be tenable, and the surplus rents can be employed as a set-off in this case, then it must also be true that, had the expenditures exceeded the rent, the balance in favor of the evicted tenant could be collected along with the principal and interest due on the purchase money, for both claims would have the same basis. In both cases the relations of the parties would be ignored, for in the one case the warrantor would be getting the benefit of a surplus of rents to which he was not entitled as against his warrantee, and in the other the warrantee would be getting as against the warrantor the benefit of a surplus of expenditures which he was only entitled to as against the real owner, to whom the improvements would go. If it be true, as the calculation for defendant indicates, that the defendant is now out of pocket a small sum on the whole transaction, no reason can be seen in the fact why settled principles of law should be disregarded. A reason for this loss is to be found in the fact that the defendant, as money lenders not uncommonly do, estimated the property at much less than its value as deduced from the rent it yielded, and when, in the turn taken by events, these disproportionately large rents, after years of accumulation, were credited against the Shotwell loan, they very greatly reduced it. The hardship sustained by the de-

fendant, if any, resulted from the accidents of business, rather than any deprivation of right. Let the judgment be entered in accordance with the views above expressed."

T. A. McWillie, Special Judge.

Truly, J., delivered the opinion of the court.

The opinion of the special judge in the court below is so luminous and accurate in its statement of the law, and so just in its conclusions on the peculiar facts of this case, that we adopt it as our own, and direct that it be published in full as the opinion of this court.

*The judgment is affirmed on direct and cross-appeal.*